# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **MARGARET A NEAL,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **7:23-cv-1020-ACA** |
| | ] | |
| **THE MONEY SOURCE, INC., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Defendant The Money Source, Inc., is the mortgage servicer for Plaintiff Margaret Neal's mortgage. After Ms. Neal exited a forbearance agreement that had paused her mortgage payments for a year, The Money Source offered her a two-step loss mitigation program under which (1) the Department of Housing and Urban Development ("HUD") would pay The Money Source the amount for which Ms. Neal was delinquent in exchange for Ms. Neal contracting to pay HUD that amount at the end of her mortgage loan (a "partial claim" contract); and then (2) The Money Source would modify her loan to reduce the principal and interest rate owed. There is conflicting evidence about whether Ms. Neal accepted that offer by mailing all the required documents back in a timely fashion. The Money Source, taking the position that she did not timely accept the offer, eventually foreclosed on her home.

Ms. Neal sues The Money Source, asserting claims of (1) breach of the loan modification agreement, the partial claim documents, and an oral agreement to modify the loan ("Count One"); (2) negligence/wantonness ("Count Two"); and (3) breach of the duties imposed by 12 C.F.R. § 1024.41 ("Regulation X"), in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f) ("Count Three"). (Doc. 19 ¶¶ 20–31). The Money Source moves for summary judgment on all claims. (Doc. 37).

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion for summary judgment. The court **WILL GRANT** the motion and **WILL ENTER SUMMARY JUDGMENT** in favor of The Money Source and against Ms. Neal with respect to (1) the part of Count One asserting that The Money Source breached an oral agreement to enter a written loan modification agreement; (2) the part of Count One asserting that The Money Source breached the partial claim documents; and (3) the part of Count Two asserting that The Money Source negligently or wantonly serviced Ms. Neal's mortgage. The court **WILL DENY** the motion for summary judgment with respect to all remaining claims.

## I.    BACKGROUND

When ruling on a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the

non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the non-movant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not even be what a jury at trial would, or will, determine to be the facts.").

In 2018, Ms. Neal and her mother took out a loan to purchase real property in Tuscaloosa, Alabama, secured by a mortgage on that property. (Doc. 57 at 22–25, 27–36; *see* doc. 41 at 120 (giving Ms. Neal's mother's name)). In 2020, Ms. Neal entered a forbearance plan temporarily pausing mortgage payments until May 31, 2021. (Doc. 57 at 38, 45; doc. 41 at 128–29). The letters notifying Ms. Neal of the forbearance plan terms stated that although the plan paused her obligation to make payments, she would still have to repay the missed payments at the end of the plan, but not "all at once, unless [she was] able to do so." (Doc. 57 at 38–41, 45–47; *see also* doc. 42 at 17).

The month after the forbearance plan expired, Ms. Neal received a statement indicating that she was delinquent on her loan and owed $10,846.57. (Doc. 41 at 337). Soon after, The Money Source sent Ms. Neal a letter informing her that it was her new mortgage loan servicer. (Doc. 42 at 23).

In September 2021, Ms. Neal called The Money Source. (*See* doc. 61 at 124–25). According to The Money Source's internal notes, she wanted "to know what post [forbearance] options she had, she was under the impression that term extension was a modification, [the customer service representative] explained the difference to . . . her and [they] proceeded with mod[ification]." (*Id.*). In November 2021, a loss mitigation employee reviewed documents and wrote several notes, including one titled "FHA POST COVID RECOVERY MOD WORKOUT," which listed, among other things, a modified interest rate, a new unpaid principal balance, a new loan term, a monthly payment amount, and a monthly escrow amount. (*Id.* at 123).

The Money Source approved Ms. Neal for a loss mitigation plan. (Doc. 57 at 8 ¶ 14). On December 14, 2021, it mailed her two packets for her to fill out and return. (Doc. 61 at 7; doc. 44 at 26–50). The first packet related to HUD's partial claim program, under which "HUD loans the borrower money at no interest, which doesn't have to be repaid until the end of the loan term. If HUD approves the claim, it pays the amount of the claim to the lender/servicer to reimburse it for the losses it incurs by modifying the loan." (Doc. 57 at 8 ¶ 17). The "partial claim packet" consisted of five parts: a promissory note from Ms. Neal to HUD, a partial claim mortgage on the real property, a notice of no oral agreements, a correction agreement, and an attorney selection notice. (Doc. 44 at 41–50). The Money Source directed Ms. Neal to execute the documents and return them to The Money Source's

agent within fourteen days of receiving the packet. (*Id.* at 38). On receipt, The Money Source would submit the packet to HUD. (Doc. 57 at 9 ¶ 19).

The second packet related to modification of the loan agreement. (*See* doc. 58 at 42). The cover letter instructed Ms. Neal to ensure that the loan modification agreement was "consistent with [her] prior discussions with [The Money Source]" and to execute and return the documents within fourteen days of receipt. (*Id.*). The proposed loan modification contemplated reducing the loan principal from $147,069 to $138,064.55 and the interest rate from 5.375% to 3.125%. (Doc. 44 at 26–33; *see* doc. 57 at 22). But The Money Source's execution of the loan modification agreement depended on Ms. Neal first executing the HUD partial claim documents and HUD approving the partial claim. (Doc. 57 at 9 ¶¶ 19–20).

It is not clear when Ms. Neal received the two packets, but she signed and notarized them on December 22, 2021. (Doc. 62 at 7–25). Ms. Neal testified that she mailed all the documents in both packets to The Money Source. (Doc. 41 at 198, 227, 236–37). On December 27, 2021, The Money Source received a FedEx packet from Ms. Neal. (Doc. 58 at 47; *see* doc. 57 at 11 ¶ 27). The Money Source's executive vice president attests that the envelope contained only the loan modification packet. (Doc. 57 at 11 ¶ 27). Although The Money Source provides evidence that its practice is to upload all documents received into an imaging system

5

(*id.* at 12 ¶ 30), it does not cite to any evidence of what it uploaded from the packet it received (*see generally* doc. 60 at 12–14).

Instead, The Money Source provides evidence that on January 12, 2022, a loss mitigation employee noted that The Money Source "REC'D INCOMPLETE MOD DOCS." (Doc. 58 at 64). The next day, the same employee filled out a modification document checklist indicating that documents were missing. (*Id.* at 49; *see also* doc. 61 at 14–15). Neither internal note indicates what documents were missing. (*See* doc. 58 at 49, 64). At her deposition, The Money Source asked Ms. Neal to confirm that she was "not disputing the fact that something was missing from the first packet that you sent," to which Ms. Neal responded, "Right." (Doc. 41 at 221).

Several days later, a customer service representative from The Money Source called Ms. Neal. (Doc. 41 at 237; doc. 58 at 72–73). He told her that The Money Source had received "the modification documents[ ] but [was] missing the partial claim piece." (Doc. 58 at 74). When Ms. Neal indicated that she had copies of the documents, he told her that The Money Source needed "that partial claim mortgage documentation signed and notarized and then sent back . . . . [I]t should be about four pages." (*Id.* at 77). He informed her that The Money Source needed the documents by January 26, 2022. (*Id.* at 78).

Ms. Neal mailed "the four forms" or "four sheets" that the customer service representative had requested to The Money Source. (Doc. 41 at 220–21). The Money

Source received a package from Ms. Neal on January 25, 2022. (Doc. 57 at 14 ¶ 42). The Money Source did not provide any imaging of the contents of that package. (*See, e.g.*, doc. 61 at 18, 20). An internal notation dated February 1, 2022 states that "FHA recovery MOD final[;] PC docs sent and recvd per Sharepoint." (*Id.* at 34). A February 23, 2022 note states, "We did receive docs on 1/25 and [they] were given to an agent the same day." (*Id.* at 36). The loss mitigation supervisor testified that because he signed "for those documents . . . it is safe to assume that she did send everything in." (*Id.* at 15; *see also* doc. 61 at 16). However, he also testified that he would not have checked the contents of the envelope to ensure that it contained all the missing documents; he checked only to ensure that the contents were meant for the loss mitigation department. (*Id.* at 20). A loss mitigation employee should have scanned in the contents of the envelope. (Doc. 61 at 20). The supervisor testified that, as far as he could tell, no loss mitigation employee ever "touched" the contents of the envelope Ms. Neal sent. (*Id.* at 18).

On February 10, 2022, Ms. Neal called The Money Source to get a fax number so she could fax all the documents to The Money Source. (Doc. 58 at 89–90). The customer service representative told her the system showed Ms. Neal had sent back the modification documents but "there were pages that were missing for the partial claim." (*Id.* at 98). The customer service representative confirmed that the documents had not been uploaded to the system. (*Id.* at 99–100). She told Ms. Neal

that if the documents had not been received before January 26, Ms. Neal would have to reapply or see what other loss mitigation programs were available. (*Id.* at 100–01).

On February 17, 2022, The Money Source sent Ms. Neal a letter saying that her application for loss mitigation assistance was denied because she had not returned a signed modification agreement within the specified time. (Doc. 58 at 106). On March 1, 2022, a customer service representative told Ms. Neal that the system indicated she had not returned a signed modification agreement and she could speak with someone, but she thought it was likely Ms. Neal was "going to have to start all the way over again." (*Id.* at 131, 133). Another customer service representative told Ms. Neal that she could not tell what was going on with the documents but "worst-case scenario is they'll just say, you know what, [Ms. Neal], I'm sorry, let's just do the paperwork again." (*Id.* at 140–41). When Ms. Neal asked in March 2022 about the possibility of foreclosure, the customer service representative told her, "[N]o, there's nothing going with that on this side." (*Id.* at 142). The Money Source foreclosed on the property three months later. (Doc. 41 at 179).

## II.    DISCUSSION

The Money Source seeks summary judgment on all claims. (Doc. 37). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). Both parties apply Alabama law to all of the claims (*see generally* docs. 60, 64), so the court will do the same. The court will address each count separately.

### 1. Count One (Breach of Contract)

In Count One, Ms. Neal asserts that The Money Source breached (1) the partial claim documents by foreclosing on the property instead of requesting replacement of the missing documents; (2) the terms of the forbearance agreement; (3) an oral agreement to enter into a written loan modification agreement; and (4) the loan modification agreement. (Doc. 19 ¶¶ 20–24). A breach of contract claim requires the plaintiff to establish the existence of the contract, the plaintiff's performance, the defendant's nonperformance, and damages. *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009). The court will address each subclaim in turn.

First is Ms. Neal's claim that The Money Source breached the partial claim documents. (Doc. 19 ¶ 22(b)). The Money Source seeks summary judgment on this claim on the ground that it was not a party to the partial claim documents and therefore could not have breached them. (Doc. 60 at 26–27). Ms. Neal concedes that summary judgment is appropriate on this claim. (Doc. 64 at 31). Accordingly, the court **WILL GRANT** the motion for summary judgment on the claim of breach of the partial claim documents without further discussion.

Second is Ms. Neal's claim that The Money Source breached the terms of the forbearance agreement. (Doc. 19 ¶ 22(c)). The Money Source does not address this claim. (*See* doc. 60 at 24–28). As such, this court will not address it either.

Third is Ms. Neal's claim that The Money Source breached an oral agreement to enter into a written loan modification agreement. (Doc. 19 ¶ 22(d)). The Money Source contends that Alabama's statute of frauds bars this claim. (Doc. 60 at 27–28). The statute of frauds provides in relevant part that "[e]very agreement or commitment to . . . modify the provisions of . . . an agreement" to lend money or delay or forbear repayment of money "is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith." Ala. Code § 8-9-2(7). The writing must "state the full terms of the agreement . . . , the mutuality of the agreement, and the intention of the parties." *DeVenney v. Hill*, 918 So. 2d 106, 115 (Ala. 2005).

Ms. Neal contends that The Money Source's internal notes constitute a "note or memorandum" sufficient to satisfy the statute of frauds because: (1) one internal note states that The Money Source "proceeded with modification"; (2) one internal note listed the key terms of the loan modification; and (3) one letter to her included loan modification documents and referenced her earlier discussions with The Money Source about the terms of the modification. (Doc. 64 at 31–32). The Money Source replies that these writings do not reflect mutual assent. (Doc. 67 at 8).

The writings on which Ms. Neal relies do not satisfy the statute of frauds. Taken in context, the first note reflects only that an employee explained to Ms. Neal the difference between a term extension and a loan modification and noted that Ms. Neal was going to seek a loan modification. (Doc. 61 at 124–25). The second note reflects only that an employee had reviewed Ms. Neal's eligibility for a loan modification and proposed new terms to be used if the loan modification was approved. (*See id.* at 123). And the last writing reflects only The Money Source's offer to Ms. Neal to modify the loan if she satisfied its conditions. (*See* doc. 44 at 26). None of these writings, taken alone or in combination, "state[s] the full terms of the agreement . . . , the mutuality  of the agreement, and the intention of the parties." *DeVenney*, 918 So. 2d at 115. Accordingly, the court **WILL GRANT** the motion for summary judgment on Ms. Neal's claim that The Money Source breached an oral agreement to enter a written loan modification agreement.

Last is Ms. Neal's claim that The Money Source breached the loan modification agreement by foreclosing on the property even though Ms. Neal was not in default of that agreement. (Doc. 19 ¶ 22(a)). The Money Source's only argument about this claim is that it did not enter a loan modification agreement because its offer to modify the loan depended on Ms. Neal returning the documents by the deadline and Ms. Neal has not presented evidence that she did so. (Doc. 60 at 24–26). Ms. Neal responds that she presented evidence she sent all documents in her

first mailing and, even if the partial claim documents were missing from that mailing, she sent the missing documents by The Money Source's amended deadline of January 26, 2022. (Doc. 64 at 29–30).

Taking the evidence in the light most favorable to Ms. Neal, a reasonable jury could find that she submitted all documents The Money Source requested by the deadlines The Money Source imposed. (*See* doc. 41 at 221, 236–37; doc. 44 at 38; doc. 57 at 14 ¶ 42; doc. 58 at 74, 77–78; doc. 61 at 34; doc. 62 at 7–25). The Money Source contends that Ms. Neal's testimony that she mailed everything contradicts her concession during her deposition that "something was missing from the first packet," so the court may accept her "admi[ssion] that she did not return both complete packets in December 2021." (Doc. 60 at 25; doc. 67 at 7; *see* doc. 41 at 221). The Money Source may be invoking the sham affidavit rule, which permits a court to "disregard an affidavit as a matter of law when, without explanation, it flatly contradicts [a witness's] own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016).

The sham affidavit rule is applied sparingly, *id.*, and only when later evidence "contradicts, without explanation, previously given *clear* testimony." *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (emphasis added). Ms. Neal's "admission" is not so "blatantly contradict[ory]" that the court may use it to

disregard her other, contemporaneous testimony that she mailed all the required documents to The Money Source. *Id.*; (*see* doc. 41 at 236–37). Ms. Neal has personal knowledge only of what she placed in the envelope that she mailed; she could not offer testimony based on personal knowledge about what The Money Source removed from the envelope. Accordingly, her testimony that she placed all the required documents in the envelope does not flatly contradict her concession that something was missing from the envelope when The Money Source received it.

Similarly, The Money Source construes Ms. Neal's testimony to be that in January, she mailed only the partial claim mortgage without mailing the remaining missing documents. (Doc. 60 at 15, 25). But a factfinder could read the phone call between Ms. Neal and The Money Source to establish that a customer service representative told Ms. Neal that the only document missing was the four-page partial claim mortgage (*see* doc. 58 at 75–78), which Ms. Neal testified she mailed to The Money Source before its January 26, 2022 deadline (doc. 41 at 221; doc. 57 at 14 ¶ 42).

In its reply brief, The Money Source argues that the representative's statements—which The Money Source itself submitted to the court for consideration—are inadmissible because they are oral promises that violate the

statute of frauds.[1] (Doc. 67 at 7–8). The cases on which The Money Source relies are inapposite. For example, in *Coleman v. BAC Servicing*, 104 So. 3d 195, 207 (Ala. Civ. App. 2012), the Alabama Court of Civil Appeals held that a defendant in an ejectment action could not prove a defense based on an oral promise not to foreclose because that oral promise was unenforceable under the statute of frauds. But here, the customer service representative's statement was not an oral promise to modify the loan; it was an extension of the deadline for Ms. Neal to accept The Money Source's offer. Nothing in the statute of frauds prohibits parties from negotiating orally, as long as the terms of the contract are in writing. *See* Ala. Code § 8-9-2; *cf. DeVenney*, 918 So. 2d at 115.

The Money Source offers no other argument about why the claim of breach of the loan modification agreement fails. (Doc. 60 at 24–26). Accordingly, the court **WILL DENY** the motion for summary judgment on the claim of breach of the loan modification agreement.

### 2.  Count Two (Negligence or Wantonness)

In Count Two, Ms. Neal asserts that The Money Source negligently or wantonly misplaced her loan documents, stated that it had not received documents when it had received them, failed to make a written request for replacement of the

---

[1] To the extent The Money Source seeks to argue that the statute of frauds bars this claim, it did not make any such argument in its initial brief (*see* doc. 60 at 23–28), and Ms. Neal has not had an opportunity to respond to that argument, so the court will not consider it. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005).

partial claim mortgage as required by the correction agreement, and foreclosed on the loan in violation of the mortgage. (Doc. 19 ¶¶ 25–27). The Money Source moves for summary judgment on this claim on the ground that Alabama law does not allow a cause of action for negligent or wanton mortgage servicing and it could not have breached a duty to modify the loan because it had no such duty. (Doc. 60 at 28–31). Ms. Neal responds that she is not asserting a claim of negligent or wanton servicing of a loan, but instead negligent or wanton handling of the partial claim documents. (Doc. 64 at 32–33).

The complaint states that "The Money Source acted negligently or wantonly by, among other things, misplacing Ms. Neal's loan documents, wrongfully stating that documents had not been received when in fact they had, failing to make a written request for replacement of the Partial Claim Mortgage under the Correction Agreement[,] and foreclosing upon the loan in violation of the mortgage." (Doc. 19 ¶ 25). The claims that The Money Source negligently or wantonly misplaced Ms. Neal's loan documents and foreclosed on the loan relate to the servicing of the loan. The claims that The Money Source negligently or wantonly stated the partial claim documents had not been received and failed to make a written request for replacement of the partial claim mortgage relate to handling of the partial claim documents. Accordingly, the complaint asserts claims of both negligent or wanton mortgage servicing and negligent or wanton handling of the partial claim documents.

Case 7:23-cv-01020-ACA    Document 69    Filed 03/18/25    Page 16 of 20

Because Alabama law does not support a claim for negligent or wanton servicing of a mortgage, *U.S. Bank Nat. Ass'n v. Shepherd*, 202 So. 3d 302, 314–15 (Ala. 2015), the court **WILL GRANT** the motion for summary judgment as to any claim that The Money Source negligently or wantonly serviced the mortgage. The remaining claims are that The Money Source negligently or wantonly stated "that documents had not been received when in fact they had [and] fail[ed] to make a written request for replacement of the Partial Claim Mortgage under the Correction Agreement." (Doc. 19 ¶ 25).

Alabama law permits negligence and wantonness claims when a lender undertakes to assist a borrower to "process and handle" a loan application to another lender. *See First Fed. Sav. & Loan Ass'n of Hamilton v. Caudle*, 425 So. 2d 1050, 1051–52 (Ala. 1982) ("Although [the defendant bank] was under no duty to help procure a federally subsidized loan for the [plaintiff borrowers], once it voluntarily agreed to assist the [plaintiff borrowers], it was required to act with due care."); *Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1219 (Ala. 2008) (discussing *Caudle* and agreeing that "Alabama clearly recognizes the doctrine that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith"); *Williamson v. Realty Champion*, 551 So. 2d 1000, 1002 (Ala. 1989) ("[The bank] was under no duty to aid [the plaintiffs] in obtaining a [Federal Housing

Administration] loan. However, once [the bank] agreed to help them procure the loan, it assumed a duty to act with due care.") (citation omitted).

Because The Money Source's only argument with respect to the claims relating to its handling of the partial claim documents is that Alabama law does not recognize such claims, the court **WILL DENY** the motion for summary judgment as to those claims.

### 3. Count Three (Violation of Regulation X)

In Count Three, Ms. Neal asserts that The Money Source violated its duties under Regulation X, 12 C.F.R. § 1024.41, by (1) concluding that she had rejected the loan modification even though she sent the necessary documents twice; and (2) failing to take timely action to respond to her request to correct the error. (Doc. 19 ¶¶ 28–31).

RESPA, 12 U.S.C. § 2605, creates a private right of action against anyone who violates the provisions of that section. 12 C.F.R. § 2605(f)(1). Regulation X sets out loss mitigation procedures mortgage servicers must use and provides that borrowers may enforce the regulation under § 2605(f). 12 U.S.C. § 1024.41; *see Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016).[2]

---

[2] A regulation cannot expand a private right of action beyond the contours created by a statute. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). But The Money Source does not address that issue (*see* doc. 60 at 33–36), and the Eleventh Circuit has acknowledged the existence of a right of action for violations of this regulation*, see Lage*, 839 F.3d at 1007. This court is bound by decisions of the Eleventh

Ms. Neal invokes § 1024.41(e)(2) (doc. 1 ¶ 29; doc. 64 at 33–35), which provides that "a servicer may deem a borrower that has not accepted an offer of a loss mitigation option within the deadline . . . to have rejected the offer of a loss mitigation option," 12 C.F.R. § 1024.41(e)(2)(i). She argues that because she returned the documents within The Money Source's deadline, it erroneously deemed her to have rejected the offer of a loss mitigation offer. (Doc. 64 at 34–35).

The Money Source contends that it is entitled to summary judgment on this claim because: (1) Ms. Neal did not timely accept the offer by returning all the required documents; (2) RESPA and Regulation X do not permit borrowers to sue to enforce a specific loss mitigation option; (3) RESPA and Regulation X do not permit borrowers to enforce loss mitigation agreements; and (4) § 1024.41(e)(2)(i) does not impose a duty on a servicer to implement any loss mitigation options. (Doc. 60 at 31–36). With respect to the first argument, the court has already explained that the evidence creates a genuine dispute of material fact about whether Ms. Neal timely returned the required documents.

The remaining arguments relate to whether Regulation X creates a right of action against a servicer for denying a borrower a loss mitigation option, but this claim is not that The Money Source denied her a loss mitigation option. (*See* doc. 19

---

Circuit unless "overruled by the Court sitting en banc or by the Supreme Court." *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009).

¶ 29). The claim is that The Money Source erroneously deemed Ms. Neal to have denied the loss mitigation offer. (*Id.*). The Money Source makes no argument about whether § 1024.41(e)(2)(i), which permits a servicer to deem a borrower to have rejected an offer if the borrower does not accept within the deadline, implies a right of action when a servicer erroneously deems a borrower to have rejected an offer. (*See* doc. 60 at 31–36). Accordingly, the court **WILL DENY** the motion for summary judgment on Count Three.

## III.    CONCLUSION

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motion for summary judgment. (Doc. 37). The court **WILL GRANT** the motion and **WILL ENTER SUMMARY JUDGMENT** in favor of The Money Source and against Ms. Neal with respect to (1) the part of Count One asserting that The Money Source breached an oral agreement to enter a written loan modification agreement; (2) the part of Count One asserting that The Money Source breached the partial claim documents; and (3) the part of Count Two asserting that The Money Source negligently or wantonly serviced Ms. Neal's mortgage. The court **WILL DENY** the motion for summary judgment with respect to all remaining claims.

The court will enter a separate partial summary judgment.

**DONE** and **ORDERED** this March 18, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE